CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 1 3 2005

JOHN F. CORCORAN, CLERK
BY: _____
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| CALVIN PERRY, | ) | |
| **Plaintiff,** | ) | Civil Action No. 7:05-cv-00519 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| KATHLEEN BASSETT, et al., | ) | By: Hon. James C. Turk |
| **Defendant(s).** | ) | Senior United States District Judge |

Plaintiff Calvin Perry, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, plaintiff alleges that prison officials have violated his constitutional rights in several respects during his incarceration at Keen Mountain Correctional Center (KMCC). Perry has prepaid the $250.00 filing fee and states in his complaint that he has exhausted administrative remedies on each of his claims up to the highest level of appeal under the prison grievance procedures, in compliance with 42 U.S.C. § 1997e(a). Therefore, he has complied with prefiling requirements for a prisoner civil rights action. Upon review of his lengthy complaint, however, the court finds that Perry fails to allege facts stating any claim upon which he is entitled to relief. Therefore, the court will dismiss the entire case, pursuant to 28 U.S.C. §1915A(b)(1). Under this provision, the court may dismiss an action filed by a prisoner against government officials at any time as frivolous, malicious or for failure to state a claim upon which relief may be granted.

## I. Unsanitary Living Conditions

In his first claim, Perry complains that the toilets in the KMCC Special Housing Unit (SHU), where he is now housed, routinely malfunction, allowing fecal matter from other inmates' toilets to flush up into Perry's toilet. He asserts that this condition causes rank odors that trouble his attempts to sleep and eat in his cell. He also asserts that the condition poses a substantial risk that he could contract a contagious disease or infection from the raw, human sewage. The problem has been compounded by the fact that officials provided him only one small sponge and a small amount of diluted cleaning fluid to sanitize his entire cell. Perry

1

alleges that the defendants are aware of these conditions. After he complained about the cleaning materials, officials provided him a whisk broom, but the toilets continue to malfunction, and Perry believes he still lacks adequate cleaning supplies. As to this claim, Perry seeks monetary and injunctive relief against Defendants K. Bassett, K. Pickerel, and Lt. D. Lee.

The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element of a conditions claim, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions, see Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993), or that plaintiff's continued, unwilling exposure to the challenged conditions creates a substantial risk of such harm in the future, see Helling v. McKinney, 509 U.S. 25, 31 (1993).

To satisfy the subjective element of a conditions claim, plaintiff must show that the defendant officials acted with deliberate indifference toward the risk of harm. Farmer v. Brennan, 511 U.S. 825, 835 (1994). To prove deliberate indifference by an official, plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed and that he actually drew that inference. Id. at 837. Then, plaintiff must show that the official disregarded the risk by failing to take "reasonable measures" to alleviate the risk. Id. at 832.

The allegations about the inadequacy of the cleaning supplies must be dismissed, pursuant to §1915A, for failure to state a claim. The defendants did provide Perry with supplies, and he fails to demonstrate that he has suffered, or is likely to suffer, any serious harm from having fewer supplies than he would like.

2

Likewise, Perry fails to allege an Eighth Amendment claim as to the toilets in the SHU. He does not allege facts demonstrating that he has contracted, or could possibly contract. serious infections or diseases from smelling the feces in the toilet. He also fails to demonstrate that the smell's interference with his eating and sleeping has caused him any serious health conditions. Thus, he fails to show injury. Perry also does not specifically allege facts demonstrating how any of the defendants received personal notification of the toilet problem or showing that any of them knows the feces smell presents a serious health risk. Therefore, he fails to show deliberate indifference. The court will dismiss this claim in its entirety, pursuant to §1915A(b)(1).

## II. Mentally Ill Cell Mate

In his second claim, Perry complains that from November 25, 2003 until February 2004, officials assigned him to share a cell with a mentally ill inmate, a Mr. Price, and when he filed grievances about this fact, they transferred him to segregation in retaliation for his grievances. Perry raised these same claims in an earlier lawsuit, Perry v. Bassett, Civil Action No. 7:04-cv-00241 (W. D. Va. 2004). In that case, the court dismissed these claims, pursuant to 28 U.S.C. § 1915A(b)(1), because the allegations did not state any constitutional claim. Perry does not allege any additional facts in his current complaint that alter the court's conclusion that these claims do not state any claim of Eighth Amendment or Due process violations and are, accordingly, not actionable under §1983. Therefore, the court will once again dismiss the claims under §1915A(b)(1), as malicious and as failing to state any actionable claim. See, e.g., Cochran v. Morris, 73 F.3d 1310, 1316-17 (4th Cir. 1996)) (finding that former version of §1915 was intended for use in dismissing repetitive, malicious lawsuits filed by prisoners).

In his complaint, Perry also asserts that officers placed him in segregation in retaliation for his pursuit of the grievance process. Because inmates have no constitutional right to a grievance procedure, use of such a procedure is not a constitutionally protected activity and cannot trigger a retaliation claim actionable under §1983. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, the court will also dismiss Perry's retaliation claim, pursuant to

3

§1915A, for failure to state a claim.

### III. Lengthy Segregated Confinement

Perry alleges the following sequence of facts in support of his third claim regarding his continued assignment to the SHU. In mid-February 2005, four white inmates in the protective custody unit (PCU) wrote false statements to the building supervisor, Lt. Lee, indicating that Perry's behavior was disruptive to the PCU. In response, officials moved Perry from the PCU to the SHU, pending an investigation. After the investigation, officials charged Perry with two disciplinary offenses. They conducted a disciplinary hearing on April 19, 2005, and ultimately dismissed the charges against Perry, based on Lt. Lee's testimony that he believed the inmates had conspired to get Perry out of the PCU. Even after the charges were dismissed, Officer Hatfield refused to transfer Perry from the SHU back to the PCU. Classification officers relied on Hatfield's recommendation and Perry's past charges to deny Perry's request to move out of the SHU. While in the SHU, Perry cannot participate in many privileges provided to general population and PCU inmates. Perry believes that officials are keeping him in the SHU because of his race and in retaliation for his litigation activities. He also believes that the defendants are arbitrarily assigning black inmates to custodial management/segregation status in the SHU for 90 days to a year for no legitimate penological reason, because of the inmates' race.

While convicted prisoners relinquish many rights upon being incarcerated, the due process clause of the Fourteenth Amendment mandates procedural safeguards before an inmate may be punished by conditions dramatically different from the range of restraint contemplated by his sentence. See Sandin v. Conner, 515 U.S. 472 (1995)(liberty interest created by state prison regulations only where case presents "a dramatic departure from the basic conditions" of inmate's indeterminate sentence). However, where deprivation of a state-created protection and/or status does not "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," federal due process rights are not implicated. Id. In other words, where a change in a prisoner's housing assignment or a loss of privileges does not depart dramatically

4

from the basic conditions contemplated by his sentence, he has no claim for relief under the Due Process Clause or §1983, even if the change occurred without all the state-created procedural protections. Id. Moreover, a state's failure to abide by its own law as to procedural protections is not a federal due process issue, Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990), and is, therefore, not actionable under §1983.

Allegations of racial discrimination are actionable under §1983, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), but merely conclusory allegations of discrimination are insufficient to state a claim. Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974). If inmates allege facts establishing that "discriminatory purpose [is] a motivating factor" in the challenged, official decision, then officials must prove "that the same decision would have resulted even had the impermissible purpose not been considered." Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 270 n. 21 (1977). Statistics of racial disparity may support a race discrimination claim only if such statistics present a "clear pattern, unexplainable on grounds other than race." Id. A few unrebutted incidents of apparent discrimination simply do not provide sufficient basis from which a court may infer a racially discriminatory intent. Knop v. Johnson, 667 F. Supp. 467, 501 (W.D. Mich. 1987).

Perry fails to demonstrate that his continued assignment to segregation triggers federal due process protections under Sandin, because he fails to demonstrate that living conditions in the SHU pose an atypical hardship for him when compared to conditions he would face in other forms of administrative segregation. Even assuming that state regulations support his view that he should be released from the SHU, officials' violations of state law do not give rise to a federal due process claim and as such, are not actionable under §1983. The court will dismiss Perry's due process claims accordingly, pursuant to §1915A.

Perry's allegations that race discrimination caused his continued segregation do not rise to constitutional proportions. Inasmuch as his own assignment to segregation for any reason does not give rise to a due process claim, proof that the assignment was based on his race cannot

5

create a constitutional claim. As evidence of disparate treatment of black inmates as a group, based on race discrimination, Perry offers only vaguely alleged instances in which black inmates, including himself, have been assigned to custodial management for no reason known to him, so he believes race motivated the action. Such conclusory allegations are not sufficient to support a constitutional claim of race discrimination in housing assignments. Therefore, the court will dismiss this claim, pursuant to §1915A.

### IV. No Weekly Health Checks

In support of his fourth claim, Perry alleges that since his assignment to the SHU on February 15, 2005, he has not received a free weekly health status check as required under state regulations. He also alleges that on March 6, 2005, Defendant Phillips failed to check Perry's blood pressure after Perry requested this test. When Perry asked why he was not receiving weekly health checks, Defendant Stevens told him that if he needed medical attention, he should sign up for sick call and pay the co-payment.

Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, Estelle v. Gamble, 429 U.S. 97 (1976), but questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Mere malpractice does not state a federal claim, Estelle, 429 U.S. at 105-106, nor does mere negligence in diagnosis. Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Under these principles, Perry's allegations in Claim IV fail to state any constitutional claim. First, the mere fact that KMCC medical staff members do not follow all VDOC required health checks for SHU inmates presents no claim actionable under §1983, a statute designed to vindicate rights under federal law, not state law. See Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Second, even assuming that the medical staff's failure to perform weekly health checks somehow falls below a medically reasonable standard of care, negligent medical care states claim actionable under §1983. Estelle, supra. Perry does not allege facts indicating

that he had a serious medical need of which medical officials were aware and did not treat during his assignment to the SHU. Therefore, he does not allege that they acted with deliberate indifference to any such need and fails to state any constitutional claim. The court will dismiss Claim IV, pursuant to §1915A.

## V. No Secure Mailbox for SHU Inmates

Perry alleges in Claim V that inmates in the PCU may not use the secure, United States mailbox that other inmates use to post their out-going letters. On September 14, 2004, while he was a PCU inmate, Perry deposited a sealed, outgoing letter in the secure mailbox. Defendant Phillips removed his letters from the box.

The court will dismiss this claim, pursuant to §1915, as utterly frivolous. No citizen has a constitutional right to use any specific type of mailbox to post letters. Moreover, Perry fails to allege that as a result of Phillips' action, he was unable to post the letter that was removed from the mailbox by using some other method of delivery. As the court can easily conceive of reasonable security measures that prison officials could require before PCU or SHU inmates could post a letter, such as a need to inspect the letters for contraband or threats to letter recipients, Perry's allegations of different treatment of such inmates also fails to state any constitutional claim. See Moss v. Clark, 886 F.2d 686 (4th Cir. 1989); Washington v. Harper, 494 U.S. 210 (1990)(prison administrative regulations permitted to infringe on inmates' constitutional rights to extent that regulation is rationally related to legitimate state interest).

## VI. Denial of Hypertension Medication

In his sixth claim, Perry alleges that Defendant Hawks, on September 12, 2004, failed to provide him with his hypertension medication after promising to bring it to him. Perry alleges that because of this one incident, he "suffered and still suffer[s] from chronic headaches, nightsweats and acute pain across his heart." Perry alleges that Hawks knew the seriousness of hypertension. Surely, she does. Perry fails to allege any facts, however, indicating that Hawks knew her failure to provide Perry with his hypertension medication on one occasion would cause

7

him the dire results he alleges. Moreover, Perry fails to allege any facts whatsoever by which he could prove that denial of the medication on one occasion proximately caused any of these discomforting conditions. As the court is satisfied that Perry could not prove facts demonstrating either deliberate indifference or causation, the court will dismiss this claim as frivolous, pursuant to §1915A.

### VII. No Physical Access to Law Library

Perry complains in Claim VII that since September 2003, officials have not allowed him physical access to the law library. He can request copies of cases by providing officials with the exact citation, but he may not check out books. He asserts that these requirements prevent him from litigating effectively his habeas corpus action and other litigation he is pursing "to protect [his] ends of justice." He also complains that he has had no assistance from an institutional attorney and/or an aid trained in the law.

Where an inmate has had access to court, as Perry has, but alleges facts showing denial of some item necessary for meaningful pursuit of his litigation, such as library access or legal assistance, the inmate must allege facts showing actual injury or specific harm to his litigation efforts resulting from denial of the item. Lewis v. Casey, 518 U.S. 343 (1996). Stated differently, an inmate must come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions. He must establish a specific prejudice stemming from the denial of the item which was necessary for proceeding with his litigation.

Perry fails to state a claim under Casey. He does not explain why lack of library access prevents him from filing his habeas action, and court records clearly demonstrate that he has been able to file civil rights actions since September 2003.[1] Perry offers no evidence that library

---

[1] The court's records indicate that Perry has filed numerous civil rights lawsuits since September 2003: Perry v. Basett, Civil Action No. 7:04-cv-00241 (W.D. Va. May 13, 2004)(dismissed under §1915A); Perry v. Basett, Civil Action No. 7:05-cv-341 (W.D. Va. June 2005) (dismissed without prejudice, pursuant to §1915(g), because Perry failed to prepay the $250.00 filing fee); Perry v. Bassett, Civil Action No. 7:03-cv-00717 (W.D. Va. 2003) (dismissed on Perry's

8

access would have allowed him to avoid dismissal of these actions; indeed, the court dismissed them because Perry failed to pay the fee or withdrew the case, or because the facts alleged did not state any conceivable, actionable claim.  None of the cases was dismissed because Perry failed to cite sufficient case law or present appropriate legal arguments.  The court finds no indication that the limitations on Perry's access to legal materials are unconstitutional and dismisses Claim VII, pursuant to §1915A.

### VIII.  Security Level Problems

Perry alleges the following acts in support of Claim VIII.  In September 9, 2003, Defendant Mills transferred Perry to KMCC-PCU.  Perry denies that this transfer was related in any way to disciplinary or behavior problems.  On July 12, 2005, Mills removed Perry's Protective Custody (PC) status, but failed to return him to a lower security level prison to match the low security level he had earned before his assignment to PC.  Instead, allegedly to retaliate against him for Perry's past litigation efforts, Mills assigned Perry to the general population at KMCC, with inmates who knew and would harass Perry as a former PCU inmate.

These allegations fail to give rise to any constitutional claim whatsoever.  First, inmates have no constitutional right to be housed in any particular prison or type of prison.  Meachum v. Fano, 427 U.S. 215 (1976).  Second, Perry's conclusory allegation that Mills' decision was retaliatory is insufficient to state any actionable claim of retaliation.  Adams, 40 F.3d 72, 74 (4th Cir. 1994).  Perry fails to allege any facts indicating that Mills was aware of Perry's litigation activities or that Mills had no legitimate reason to maintain Perry, for the time being, at KMCC. Finally, Perry does not demonstrate that he ever actually entered the general population at KMCC, as he states he has been housed in the SHU since February 2005.  The court will dismiss Claim VIII, pursuant to §1915A, for failure to state any constitutional claim.  An appropriate order shall be issued this day.

---

motion to withdraw); Perry v. Bassett, Civil Action No. 7:04-cv-00735 (W.D. VA. 2004) (dismissed because Perry had three "strikes" under §1915(g) and did not pay the $150.00 filing fee within the time allotted).

XI.  Motion for Preliminary Injunction

Perry has moved for a preliminary injunction related to several of his claims.  The court herein dismisses all of Perry's claims on the merits.  Therefore, he cannot demonstrate likelihood of success on the merits so as to demonstrate that any interlocutory injunctive relief is warranted.  See Wetzel v. Edwards, 635 F.2d 283 (4th Cir. 1980); Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing, Co., 550 F.2d 189, 195 (4th Cir. 1977).  The court will deny his motion for preliminary injunctive relief accordingly.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER:  This _13th_ day of September, 2005.

Senior United States District Judge

10